Filed 12/15/25  Reyes-Gonzalez v. C & C North America CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

|  |  |
|---|---|
| GUSTAVO REYES-GONZALEZ, Plaintiff and Appellant, v. C & C NORTH AMERICA, INC., Defendant and Respondent. | B340766 (Los Angeles County Super. Ct. No. 22STCV31907) |

APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Reversed with directions.

Metzger Law Group, Raphael Metzger, Scott P. Brust, and Brian P. Barrow for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Rod J. Cappy, Patrick J. Foley, Marla T. Almazan, and Wendy S. Dowse for Defendant and Respondent.

_____

# INTRODUCTION

For 15 years Gustavo Reyes-Gonzalez fabricated and installed natural and artificial stone countertops in Southern California residences. He claims that, as a result of exposure to respirable crystalline silica (a fine dust generated while cutting and polishing artificial stone products), he developed a serious lung disease called silicosis. Reyes-Gonzalez has received a double lung transplant; he anticipates he will need substantial medical support for the rest of his life.

Reyes-Gonzalez filed this action against 46 defendants (manufacturers, importers, and distributors of natural and artificial stone products), one of whom was C & C North America, Inc., a distributor. Reyes-Gonzalez asserted causes of action for negligence, strict products liability (design defect and failure to warn), and fraudulent concealment.

C & C filed a motion for summary judgment or in the alternative for summary adjudication. C & C argued it was entitled to summary adjudication on all causes of action (and therefore summary judgment) because three affirmative defenses shielded C & C from liability: Reyes-Gonzalez was a sophisticated user of artificial stone products; Reyes-Gonzalez's hirer, Damian Silverio, was a sophisticated intermediary; and federal regulations placed the duty to warn employees of hazards in the workplace on employers, not distributors. C & C also argued it was entitled to summary adjudication on Reyes-Gonzalez's cause of action for fraudulent concealment because C & C did not have a fiduciary or transactional relationship with him, and therefore did not owe him a duty to disclose hazards. Finally, C & C argued it was entitled to summary adjudication on Reyes-Gonzalez's claim for punitive

2

damages because he could not show C & C or its representatives acted with malice.

The trial court granted the motion for summary judgment. The court ruled C & C was entitled to summary judgment because Reyes-Gonzalez failed to show he was exposed to products distributed by C & C. That was error because C & C did not move for summary adjudication or summary judgment on that ground. The trial court also ruled C & C was entitled to summary adjudication on Reyes-Gonzalez's causes of action for negligence and products liability because the sophisticated intermediary defense insulated C & C from liability. That was error too: C & C did not submit any evidence that it warned Silverio (the intermediary) or that Silverio knew or reasonably should have known of the hazards of working with artificial stone products. The court also ruled C & C was entitled to summary adjudication on Reyes-Gonzalez's cause of action for fraudulent concealment. That ruling was correct: Reyes-Gonzalez admitted he had no direct relationship or contact with C & C, which is generally required to create a duty to disclose. Finally, the trial court granted C & C's motion on Reyes-Gonzalez's claim for punitive damages. That ruling was error: C & C did not meet its initial burden to show it did not act with malice. Therefore, we reverse.

# FACTUAL AND PROCEDURAL BACKGROUND

A.     *Reyes-Gonzalez Fabricates Countertops Made of Natural and Artificial Stone and Develops Silicosis*

From 2007 to 2022 Reyes-Gonzalez worked as a countertop fabricator in Southern California. For most of that time, Reyes-Gonzalez worked for Silverio,[1] the owner and operator of DS Granite and Silverio Stoneworks. Reyes-Gonzalez used power tools to cut, drill, grind, sand, and polish artificial stone slabs— a process that created a lot of dust. Water used with the power tools helped contain the airborne dust, and Reyes-Gonzalez wore a mask when working with artificial stone slabs. But he still felt the dust get into his nose while he was working. In addition, Reyes-Gonzalez took off his mask when he cleaned his work area at the end of the day because the masks were uncomfortable. By then, any dust contained by water during the countertop fabrication process had dried and became airborne as Reyes-Gonzalez cleaned surfaces and swept the floor.

No one warned Reyes-Gonzalez the dust generated while working with artificial stone products could harm him. According to Reyes-Gonzalez, he never saw a warning on an artificial stone slab or received information from an artificial stone manufacturer, supplier, or distributor; he never took any classes or obtained any certification in countertop fabrication; and Silverio never warned him about the potential health effects of working with artificial stone or trained him how to work safely with artificial stone products.

---

[1]     Reyes-Gonzalez asserts he was an independent contractor, not Silverio's employee.

4

Doctors ultimately diagnosed Reyes-Gonzalez with silicosis and progressive massive fibrosis.[2]  Reyes-Gonzalez alleged his exposure to respirable crystalline silica and other toxic hazards released during his work with artificial stone products was a substantial factor in causing his lung disease.  Reyes-Gonzalez received a double lung transplant in February 2023.

B.     *Reyes-Gonzalez Sues Manufacturers, Importers, and Distributors of Artificial Stone Products, Including C & C*

Reyes-Gonzalez filed this action against numerous manufacturers, importers, and distributors of natural and artificial stone products, asserting causes of action for negligence, products liability (failure to warn and design defect), and fraudulent concealment.  Reyes-Gonzalez alleged that, while fabricating countertops from the artificial stone products manufactured, imported, and distributed by the defendants, he "inhaled and was exposed to significant amounts of silica, metals, and other toxic chemicals from said products."  As a direct result of that exposure, Reyes-Gonzalez alleged, he "developed silicosis and has required extensive medical treatments and

---

[2]      "Silicosis is a progressive and incurable disease of the lungs caused by the prolonged inhalation of small respirable particles of crystalline silica." (*Headley v. Ferro Corp.* (W.D.Wash. 2008) 630 F.Supp.2d 1261, 1264, fn. 1.)  "Fibrosis is the formation of connective fibrous tissue in an organ" (*Edwards v. Barnhart* (N.D. Ala. 2004) 319 F.Supp.2d 1283, 1285, fn. 11), and "[p]ulmonary fibrosis is scar tissue that develops in the lungs" (*Coates on Behalf of Coates v. Bowen* (7th Cir. 1989) 875 F.2d 97, 98, fn. 3).

hospitalizations, including a double lung transplant, and will continue to require extensive medical treatments and hospitalizations for the rest of his life, including lung transplantation." Reyes-Gonzalez alleged he worked with two artificial stone products distributed by C & C, Silestone and Dekton.

In his negligence cause of action Reyes-Gonzalez alleged the defendants "failed to adequately warn [him] of the toxic hazards of their stone products and failed to provide adequate instructions . . . how to safely use their products so as to prevent him from developing and suffering from silicosis." In his strict liability failure to warn cause of action Reyes-Gonzalez alleged the defendants' products were defective "because they lacked warnings adequate to apprise [him] of their toxic hazards and their serious effects upon the human body, and they lacked instructions for handling and use adequate to prevent" his exposure to "toxic stone products," including silica and toxic metals. In his strict liability design defect cause of action Reyes-Gonzalez alleged the defendants' products "were defective in their design because they failed to perform as safely as an ordinary user would expect when used in an intended or reasonably foreseeable manner and the risks inherent in said design outweighed the benefits." And in his fraudulent concealment cause of action Reyes-Gonzalez alleged the defendants were required to, but did not, disclose "the toxic and fibrogenic properties of their products directly to [him]." Reyes-Gonzalez sought compensatory and punitive damages on his causes of action for products liability and fraudulent concealment.

6

C.     *C & C Files a Motion for Summary Judgment or in the Alternative for Summary Adjudication*

C & C moved for summary judgment or, in the alternative, for summary adjudication on each cause of action and on Reyes-Gonzalez's claim for punitive damages.  C & C based its motion primarily on three defenses that, according to C & C, relieved it of the duty to warn Reyes-Gonzalez of the hazards of working with the artificial stone products C & C distributed.  First, C & C argued it was undisputed Reyes-Gonzalez was a "sophisticated user" of the defendants' products, i.e., someone who knew or reasonably should have known of the risks of working with artificial stone products.  To show Reyes-Gonzalez was aware of the hazards of working with artificial stone products, C & C cited Reyes-Gonzalez's deposition testimony that he worked in the stone fabrication industry for 15 years and that he and his coworkers wore masks during the countertop fabrication process.  C & C also argued any failure to warn Reyes-Gonzalez of the hazards of working with artificial stone products did not cause his injury because Reyes-Gonzalez "never read or relied upon the warnings or instructions related to the stone countertop products supplied" by C & C (nor did he read the manual for the saw he used to fabricate the artificial stone countertops) and because Reyes-Gonzalez failed to use the best available respiratory masks.  He felt they were "heavy and uncomfortable."

Second, C & C argued it was undisputed Silverio, who hired Reyes-Gonzalez, was a "sophisticated intermediary," someone who knew or should have known of the risks of fabricating countertops from artificial stone products and on whom C & C reasonably relied to convey those risks to Reyes-Gonzalez.

7

C & C argued Reyes-Gonzalez's deposition testimony he worked in shops owned by Silverio for more than 10 years showed Silverio was "an experienced owner and operator of various stone fabrication shops" who knew or should have known of the risks of working with artificial stone products and on whom C & C reasonably relied to communicate product warnings to Reyes-Gonzalez.

Third, C & C argued federal regulations known as the Hazard Communication Standard (29 C.F.R. § 1910.1200)[3] required employers to warn employees about the presence of hazardous chemical substances in the employee's workplace. C & C contended Silverio, not C & C, was liable for Reyes-Gonzalez's injuries because Silverio failed to comply with the federal regulations regarding respirable crystalline silica. C & C asserted it was undisputed Silverio did not warn Reyes-Gonzalez of the risks of working with artificial stone products, did not train Reyes-Gonzalez on how to work safely with artificial stone products, and did not teach Reyes-Gonzalez how to clean his work site safely after working with artificial stone products.

In support of its motion for summary adjudication on Reyes-Gonzalez's cause of action for fraudulent concealment, C & C argued it was undisputed C & C did not owe Reyes-Gonzalez a duty to disclose information about the artificial stone products it distributed. In particular, C & C contended

---

[3]    "The Hazard Communication Standard, commonly known as the 'right to know law,' is intended to ensure that hazards of chemicals are identified, and that information concerning those hazards is shared with employers and employees." (*Velasquez v. Centrome, Inc.* (2015) 233 Cal.App.4th 1191, 1209, fn. 6.)

8

that a duty to disclose such information generally arises in the context of a fiduciary or transactional relationship and that Reyes-Gonzalez admitted he had no direct communication or relationship with C & C or any of its representatives. C & C also contended Reyes-Gonzalez failed, in his discovery responses, "to identify a single fact, witness, or document demonstrating an agreement, transaction, or communication with C & C . . . to support the necessary duty to disclose." Finally, in support of its motion for summary adjudication on Reyes-Gonzalez's claim for punitive damages, C & C argued Reyes-Gonzalez could not show C & C acted with malice because "the Silestone and Dekton products had warnings" and Reyes-Gonzalez "admitted that he did not read[ ] any warnings submitted on the Dekton and Silestone products, nor is he aware of any evidence that C & C . . . engaged in despicable conduct perpetrated in conscious disregard of his rights and safety."

D.   *Reyes-Gonzalez Opposes the Motion; C & C Objects to Defects in His Opposition*

In opposition to the motion Reyes-Gonzalez argued C & C failed to meet its moving burden on summary judgment. In response to C & C's sophisticated user defense, Reyes-Gonzalez argued that he "previously briefed the inapplicability" of the defense, but that he could not "include that briefing here due to page limitations" (though he did not purport to incorporate any argument by reference or indicate where he had previously made the argument) and that, in any event, C & C's evidence did not shift the burden to him to create a triable issue of material fact. Specifically, Reyes-Gonzalez argued that, though C & C relied on his deposition testimony he

9

learned how to fabricate artificial stone countertops from his coworkers, that testimony did not, according to Reyes-Gonzalez, show he had any level of sophistication regarding artificial stone products, such as specialized safety training or professional license.  In response to C & C's sophisticated intermediary defense, Reyes-Gonzalez argued that C & C had not submitted any evidence to show Silverio was "sophisticated" and that Reyes-Gonzalez had previously briefed the inapplicability of the defense (somewhere), but that again he could not include that briefing "due to page limitations."  And regarding the Hazard Communication Standard, Reyes-Gonzalez argued the federal regulation did not preempt common law tort claims.

        In response to C & C's motion for summary adjudication on Reyes-Gonzalez's cause of action for fraudulent concealment, Reyes-Gonzalez argued C & C relied on "misleading" deposition testimony.  Reyes-Gonzalez acknowledged that, at his deposition, he stated he had no relationship with C & C, but he asserted that C & C does business under the name "Cosentino." Reyes-Gonzalez claimed (without evidentiary support) that, had counsel for C & C asked Reyes-Gonzalez about his relationship with Cosentino, counsel "would have received different answers to his questions, but [counsel] purposefully asked his questions about the name of the company under which it does not do business to create a sham record for summary judgment." Reyes-Gonzalez argued C & C owed him a legal duty of disclosure because, among other things, C & C sold artificial stone products to his hirer, Silverio.  Reyes-Gonzalez also argued that, even if C & C met its initial burden on summary judgment, the deposition testimony of two C & C corporate officers, Roberto Contreras, Jr. and Federico J. Soria Soler, created "multiple

10

issues of material fact whether C & C fraudulently concealed the hazards of its artificial stone products from fabrication workers," such as Reyes-Gonzalez (although Reyes-Gonzalez did not submit the transcripts of those depositions).

Finally, in response to C & C's motion for summary adjudication on Reyes-Gonzalez's claim for punitive damages, Reyes-Gonzalez argued C & C failed to meet its moving burden because it did not submit any evidence of the absence of malice, oppression, or fraud, such as a declaration of an officer, managing agent, or employee of C & C regarding its efforts to address the health and safety of workers who worked with the artificial stone products it distributed. Reyes-Gonzalez again argued that, even if C & C met its moving burden, the deposition testimony of Contreras and Soria Soler "clearly raises triable issues of material fact that C & C acted with fraud, malice, and oppression and that its despicable conduct was ratified by officers of the company."

In reply C & C argued, among other things, that the memorandum of points and authorities Reyes-Gonzalez submitted was defective on numerous grounds, including that it was, without permission, substantially over the 20-page limit, (Cal. Rules of Court, rule 3.1113(d)); that it improperly relied on "vague references to prior legal arguments," rather than specific references "by date of execution and title" (Cal. Rules of Court, rules 3.1110(d), 3.1113(b)); and that the accompanying separate statement did cite any deposition testimony by Contreras or Soria Soler (Cal. Rules of Court, rule 3.1350(f)(3)). C & C asked the court to disregard the defective portions of Reyes-Gonzalez's opposition.

E.     *The Trial Court Grants the Motion*

The court granted C & C's motion for summary judgment. The court stated that "C & C . . . raises several issues in its motion, including lack of causation." The trial court ruled that Reyes-Gonzalez identified Dekton and Silestone as products he worked with and that, though Reyes-Gonzalez asserted Cosentino (the manufacturer of Dekton and Silestone) was C & C's "'parent company,'" Reyes-Gonzalez had not offered any relevant evidence on that point and thus "failed to identify C & C . . . as a company that supplied products on which he worked or was exposed." Therefore, the court ruled, C & C was entitled to summary judgment.

The court also granted C & C's motion for summary adjudication on the sophisticated intermediary defense, the cause of action for fraudulent concealment, and on Reyes-Gonzalez's claim for punitive damages. The court ruled the sophisticated intermediary defense applied. The court concluded that, though Reyes-Gonzalez asserted he "'previously briefed'" the inapplicability of the defense, he did so "with no indication where." The court "decline[d] the invitation 'to rummage through the papers to construct [Reyes-Gonzalez's] case.'" The court did not rule whether C & C's two other defenses—sophisticated user and the federal Hazard Communication Standard—applied. The court also ruled that Reyes-Gonzalez "failed to cite or analyze [*Bigler-Engler v. Breg, Inc.* (2017) 7 Cal.App.5th 276] on the issue of fraudulent concealment" and that the "argument in opposition

12

to punitive damages was made in pages of his oversize brief which were stricken."[4]

F.  *Reyes-Gonzalez Files a Motion for Relief from the Trial Court's Order Granting C & C's Motion for Summary Judgment and for a New Trial*

Reyes-Gonzalez filed a motion for relief under Code of Civil Procedure section 473, subdivision (b) or, in the alternative, for a new trial under Code of Civil Procedure section 657.  Counsel for Reyes-Gonzalez argued new evidence, obtained after he filed his opposition to C & C's motion, conclusively established C & C distributed Silestone products to Silverio.  Counsel also argued he "did not appreciate that C & C . . . was disputing that it has at all times been the exclusive distributor of Cosentino's Silestone and Dekton products in the United States; C & C . . . did not assert this as a disputed issue in its motion . . . ."  The record does not include a ruling on this motion.

The court entered judgment in favor of C & C. Reyes-Gonzalez timely appealed.

## DISCUSSION

A.  *Summary Judgment Law and Standard of Review*

The court may grant a motion for summary judgment or summary adjudication when ""all the papers submitted show that there is no triable issue as to any material fact and that the

---

[4]  The court struck pages 25 through 28 of Reyes-Gonzalez's memorandum of point and authorities.

moving party is entitled to a judgment as a matter of law.'"' (*Campbell v. FPI Management, Inc.* (2024) 98 Cal.App.5th 1151, 1161; see Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) A defendant who moves for summary judgment has the initial burden of showing each cause of action is without merit. (See Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843; *Sabetian v. Exxon Mobil Corp.* (2020) 57 Cal.App.5th 1054, 1068.) "A defendant can meet this burden by 'prov[ing] an affirmative defense, disprov[ing] at least one essential element of the plaintiff's cause of action [citations], or show[ing] that an element of the cause of action cannot be established.'" (*Severin Mobile Towing, Inc. v. JPMorgan Chase Bank, N.A.* (2021) 65 Cal.App.5th 292, 302; see Code Civ. Proc., § 437c, subd. (p)(2).)

If "the defendant moves for summary judgment on the grounds that one or more elements of the plaintiff's [cause of action] cannot be established, the defendant must present evidence that either 'conclusively negate[s] an element of the plaintiff's cause of action' or 'show[s] that the plaintiff does not possess, and cannot reasonably obtain,' evidence needed to establish an element . . . ." (*White v. Smule, Inc.* (2022) 75 Cal.App.5th 346, 354; see *Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at pp. 853-855; *Doe v. Roman Catholic Archbishop of Los Angeles* (2021) 70 Cal.App.5th 657, 668.) "'[A] defendant moving for summary judgment based upon the assertion of an affirmative defense . . . "has the initial burden to show that undisputed facts support each element of the affirmative defense."'" (*Consumer Cause, Inc. v. SmileCare* (2001) 91 Cal.App.4th 454, 467-468; see *Severin Mobile Towing,*

*Inc. v. JPMorgan Chase Bank, N.A.*, *supra*, 65 Cal.App.5th at p. 302.) "'Only after the defendant carries that initial burden does the burden shift to the plaintiff "to show that a triable issue of one or more material facts exists as to the cause of action . . . ."'" (*Fajardo v. Dailey* (2022) 85 Cal.App.5th 221, 225-226; see Code Civ. Proc. § 437c, subd. (p)(2); *Aguilar*, at pp. 849-850.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, at p. 850; see *Lemm v. Ecolab Inc.* (2023) 87 Cal.App.5th 159, 169.)

"'On appeal from a summary judgment ruling, we review the record de novo to determine whether triable issues of material fact exist.'" (*Wawrzenski v. United Airlines, Inc.* (2024) 106 Cal.App.5th 663, 684; see *Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.) "'"[W]e take the facts from the record that was before the trial court when it ruled on [the] motion. [Citation.] . . . We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party."'" (*Hampton*, at p. 347; see *Wawrzenski*, at p. 684.) "'We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale.'" (*Martin v. Board of Trustees of California State University* (2023) 97 Cal.App.5th 149, 161; see *Hampton*, at p. 347; *Wawrzenski*, at p. 684.)

15

B.     *The Trial Court Erred in Granting C & C's Motion for Summary Judgment on a Ground Not Asserted in the Motion*

Reyes-Gonzalez argues the trial court erred in granting C & C's motion for summary judgment on a ground C & C did not raise in its motion, namely, that Reyes-Gonzalez failed to establish he was exposed to products manufactured by C & C's parent company.  Reyes-Gonzalez is correct.

C & C did not argue it was entitled to summary judgment, or summary adjudication on any cause of action, because Reyes-Gonzalez was not exposed to its product.  Quite the opposite:  In its memorandum of points and authorities C & C stated it "distributed (but did not manufacture) two of the artificial stone countertop products (Silestone and Dekton) that [Reyes-Gonzalez] allegedly cut, fabricated and installed over the course of his career."  In response to Fact Nos. 1-64 of Reyes-Gonzalez's separate statement of additional disputed facts, where Reyes-Gonzalez cited evidence he worked with and was exposed to dust from C & C products, C & C stated, 64 times: "C & C's motion is not a causation motion and [Reyes-Gonzalez's] identification and work with slabs is not relevant."  And in its reply memorandum C & C reiterated those claimed disputed facts were irrelevant:  "None of these facts have [*sic*] anything to do with C & C's . . . motion, since product-linking causation (i.e., the fact that [Reyes-Gonzalez] may or may not have historically worked with slabs distributed by C & C . . .) was not even an issue raised in C & C's . . . motion."

C & C does not defend the trial court's decision to grant summary judgment on this ground.  Nor could it.  The court plainly erred by summarily adjudicating an issue C & C not only

16

did not raise, but affirmatively disavowed. (See *San Jose Construction, Inc. v. S.B.C.C., Inc.* (2007) 155 Cal.App.4th 1528, 1545 ["A moving party is not entitled to summary judgment on a ground not raised in its motion, even if that ground would have been sufficient."]; *County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 326 [reviewing court will not affirm summary judgment on legal ground not stated in defendants' motion]; see also *Borman v. Brown* (2021) 59 Cal.App.5th 1048, 1070, fn. 21 [defendants were not entitled to summary adjudication on a ground they did not move on, and where they did not make "any argument on appeal as to why we may nevertheless consider this contention for the first time on appeal"].)

> C. *The Trial Court Erred in Granting C & C's Motion for Summary Adjudication on C & C's Sophisticated Intermediary Defense*
>
> 1. *Applicable Law*

"California law recognizes three types of product defects for which a product supplier may be liable: manufacturing defects, design defects, and warning defects." (*Ramos v. Brenntag Specialties, Inc.* (2016) 63 Cal.4th 500, 507; see *Webb v. Special Electric Co., Inc.* (2016) 63 Cal.4th 167, 180-181 (*Webb*); *Williams v. J-M Manufacturing Co., Inc.* (2024) 102 Cal.App.5th 250, 256; see also *Shih v. Starbucks Corp.* (2020) 53 Cal.App.5th 1063, 1067 ["'A product can be defective in its manufacture or design, or because it fails to include a warning about known risks.'"].) "Design defects appear in products that, although properly manufactured, are dangerous because they lack a critical feature needed to ensure safe use." (*Webb*, at p. 180; see *Williams*, at

17

p. 257.) Warning defects render a product "'dangerous because it lacks adequate warnings or instructions.'" (*Webb*, at p. 180; see *Williams*, at p. 257.) "Products liability plaintiffs often allege both design and warning defects." (*Webb*, at p. 181.) A product supplier may also be liable for a negligent failure to warn of a product's risks. (See *ibid.* ["to prevail on a claim for *negligent* failure to warn, the plaintiff must prove that the seller's conduct fell below the standard of care"].)

The Supreme Court adopted the sophisticated intermediary defense to failure to warn claims in *Webb*, *supra*, 63 Cal.4th 167. "Under this rule, a supplier may discharge its duty to warn end users about known or knowable risks in the use of its product if it: (1) provides adequate warnings to the product's immediate purchaser, or sells to a sophisticated purchaser that it knows is aware or should be aware of the specific danger, *and* (2) reasonably relies on the purchaser to convey appropriate warnings to downstream users who will encounter the product. Because the sophisticated intermediary doctrine is an affirmative defense, the supplier bears the burden of proving that it adequately warned the intermediary, or knew the intermediary was aware or should have been aware of the specific hazard, and reasonably relied on the intermediary to transmit warnings." (*Id.* at p. 187.) The "sophisticated intermediary defense applies to failure to warn claims sounding in either strict liability or negligence."[5] (*Ibid.*)

---

[5] The sophisticated intermediary defense relates to the failure to warn; it applies in design defect cases based on the consumer expectations theory. (Cf. *Watts v. Pneumo Abex, LLC* (2024) 106 Cal.App.5th 248, 260 ["the sophisticated user defense applies to a design defect claim based on the consumer

18

Determining whether an intermediate purchaser is sophisticated and whether a supplier's reliance is reasonable generally involves resolving factual issues. "To establish a defense under the sophisticated intermediary doctrine, a product supplier must show not only that it warned or sold to a knowledgeable intermediary, but also that it actually and reasonably relied on the intermediary to convey warnings to end users. This inquiry will typically raise questions of fact for the jury to resolve unless critical facts establishing reasonableness are undisputed." (*Webb, supra,* 63 Cal.4th at pp. 189-190.)

> 2. *C & C Did Not Meet Its Burden To Show Silverio Knew or Reasonably Should Have Known of the Risks of Working with Artificial Stone Products*

Because the intermediate purchaser doctrine is an affirmative defense, C & C had to submit undisputed facts to support each element of the defense. (See *Doe v. Mount Pleasant Elementary School Dist.* (2025) 113 Cal.App.5th 1208, 1216

---

expectations test, as a sophisticated user may not claim to be an ordinary consumer"].) Because Reyes-Gonzalez relied on both the consumer expectations theory and the risk-benefit theory in his cause of action for design defect, and the sophisticated intermediary defense does not apply to the risk-benefit theory (see *Chavez v. Glock, Inc.* (2012) 207 Cal.App.4th 1283, 1313 ["the sophisticated user defense does not bar a design defect cause of action asserted under a risk-benefit theory"]), the trial court erred in entering judgment in favor of C & C on the design defect cause of action for this additional reason.

19

["A defendant seeking summary judgment based on an affirmative defense ""has the initial burden to show that undisputed facts support each element of the affirmative defense."""]; *Consumer Cause, Inc. v. SmileCare*, *supra*, 91 Cal.App.4th at p. 468 [order granting a motion for summary judgment by a defendant who fails to produce evidence supporting one element of an affirmative defense "'would have to be reversed, *even if the plaintiff failed to introduce a scintilla of evidence challenging that element*'"].) C & C did not submit such evidence.

Regarding the first element of the defense, that C & C warned Silverio or that Silverio knew or should have known of the hazards of working with artificial stone products, C & C submitted no evidence it warned Silverio. C & C asserted it "distributed stone countertop product with all applicable warnings to Damian Silverio, an experienced owner and operator of various stone fabrication shops throughout Southern California." But the evidence C & C cited in support of that assertion established only that Reyes-Gonzalez worked for Silverio for many years, that Silverio "obtained various natural and artificial stone countertop slabs via shipments directly from manufacturers or suppliers, but also indirectly, by picking them up from other third-party retailers," and that Silverio "obtained his Cosentino and Dekton slabs directly, via shipments to his fabrication shops." Though it was undisputed that material safety data sheets for Silestone and Dekton included information regarding the risk of exposure to dust generated during the dry cutting process and recommended using respiratory protection, C & C offered no evidence it ever gave Silverio material safety

20

data sheets or any other warning regarding the hazards of working with artificial stone products.

C & C argues it did not need to warn Silverio because Silverio was aware or should have been aware of the hazards of working with artificial stone products. This argument fails. First, C & C forfeited this argument by not making it in the trial court. (See *Doe v. Roman Catholic Archbishop of Los Angeles*, *supra*, 70 Cal.App.5th at p. 672 [defendant forfeits arguments on appeal by not making them "in its motion for summary judgment"]; *Jackpot Harvesting Co., Inc. v. Superior Court* (2018) 26 Cal.App.5th 125, 155 ["arguments not raised in summary judgment proceedings" are forfeited].)

Second, there was no evidence to support C & C's (new) argument. "Under the sophisticated intermediary doctrine's first prong, generally the supplier must have provided adequate warnings to the intermediary about the particular hazard. [Citations.] In some cases the buyer's sophistication can be a substitute for actual warnings, but this limited exception only applies if the buyer was so knowledgeable about the material supplied that it knew or should have known about the particular danger. [Citations.] . . . If a purchaser is so knowledgeable about a product that it should already be aware of the product's particular dangers, the seller is not required to give actual warnings telling the buyer what it already knows." (*Webb, supra,* 63 Cal.4th at p. 188.)

C & C did not submit any evidence Silverio was aware of the hazards of working with artificial stone products. (If anything, the undisputed fact Silverio did not provide any workplace safety warnings or training to Reyes-Gonzalez supported a reasonable inference Silverio was not aware of those

21

hazards.)  C & C argues that, "[a]t the very least," Silverio should have been aware of the hazards of working with artificial stone products and that C & C "carried its initial burden on the first prong of the sophisticated intermediary doctrine with evidence that Silverio Stoneworks and DS Granite were members of the industry [Reyes-Gonzalez] admits was well aware of hazards of inhaling silica dust."  C & C, however, cites no "admission" by Reyes-Gonzalez the countertop fabrication industry was "well aware" of the hazards of cutting artificial stone products at the time Reyes-Gonzalez worked for Silverio.  The evidence C & C cites relates only to the locations of Silverio's workshops (Garden Grove, Santa Ana, Fullerton, and Anaheim) and the names of Silverio's businesses (DS Granite and Silverio Stoneworks).  Those undisputed facts did not shed any light on what a purchaser of artificial stone products such as Silverio reasonably should have known about the hazards of working with artificial stone products at the time Reyes-Gonzalez worked for Silverio.[6]

---

[6]     As discussed, though C & C moved for summary adjudication on three affirmative defenses, the trial court ruled on only one—the sophisticated intermediary defense.  C & C does not argue we should affirm the judgment based on either of the other two defenses the trial court did not reach: the sophisticated user defense or the federal Hazard Communication Standard.  On Reyes-Gonzalez's causes of action for negligence and strict liability, C & C argues that its failure to warn Reyes-Gonzalez was not a substantial factor in causing his injury because he speaks and reads only Spanish and that federal and state regulations required C & C to provide warnings only in English.  C & C forfeited this argument by not making it in the trial court.  (See *Doe v. Roman Catholic Archbishop of Los Angeles, supra,*

D.	*The Trial Court Did Not Err in Granting C & C's Motion for Summary Adjudication on Reyes-Gonzalez's Cause of Action for Fraudulent Concealment*

1.	*Applicable Law*

"The required elements for fraudulent concealment are (1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would have acted differently if the concealed or suppressed fact was known; and (5) the plaintiff sustained damage as a result of the concealment or suppression of the material fact." (*Rattagan v. Uber Technologies, Inc.* (2024) 17 Cal.5th 1, 40; accord, *Bjoin v. J-M Manufacturing Co., Inc.* (2025) 113 Cal.App.5th 884, 901.) C & C moved for summary adjudication on the second element, arguing it did not have a legal duty to disclose information about its artificial stone products to Reyes-Gonzalez.

"A duty to disclose a material fact can arise if (1) it is imposed by statute; (2) the defendant is acting as plaintiff's fiduciary or is in some other confidential relationship with plaintiff that imposes a disclosure duty under the circumstances; (3) the material facts are known or accessible only to defendant, and defendant knows those facts are not known or reasonably discoverable by plaintiff (i.e., exclusive knowledge); (4) the defendant makes representations but fails to disclose other facts

70 Cal.App.5th at p. 672; *Jackpot Harvesting Co., Inc. v. Superior Court, supra,* 26 Cal.App.5th at p. 155.)

23

that materially qualify the facts disclosed or render the disclosure misleading (i.e., partial concealment); or (5) defendant actively conceals discovery of material fact from plaintiff (i.e., active concealment)." (*Rattagan v. Uber Technologies, Inc.*, *supra*, 17 Cal.5th at p. 40; see *Bjoin v. J M Manufacturing Co., Inc.*, *supra*, 113 Cal.App.5th at pp. 901-902; *Bigler-Engler v. Breg, Inc.*, *supra*, 7 Cal.App.5th 276, 312.) "Circumstances (3), (4), and (5) presuppose a preexisting relationship between the parties, such as 'between seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement. [Citation.] All of these relationships are created by transactions between parties from which a duty to disclose facts material to the transaction arises under certain circumstances.' [Citation.] 'Such a transaction must necessarily arise from direct dealings between the plaintiff and the defendant; it cannot arise between the defendant and the public at large.'" (*Rattagan*, at pp. 40-41; see *Bjoin*, at pp. 901-902; *Bigler-Engler*, at p. 312.)

Reyes-Gonzalez's fraud cause of action implicates circumstances (3) and (4). Reyes-Gonzalez alleged the defendants owed him a legal duty to disclose "the toxic hazards" of their products "because Defendants alone had knowledge of material facts, to wit the toxic properties of their products, which were not accessible to [Reyes-Gonzalez]" and "because Defendants made representations regarding their stone products, but failed to disclose additional facts which materially qualify the facts disclosed and/or which rendered the disclosures made, likely to mislead [Reyes-Gonzalez]."

24

## 2. *C & C Carried Its Burden To Show It Did Not Owe Reyes-Gonzalez a Duty of Disclosure*

To establish it did not have a legal duty to disclose the hazards of working with artificial stone products to Reyes-Gonzalez, C & C submitted evidence Reyes-Gonzalez did not have any direct dealings with C & C or any representative of C & C. C & C cited Reyes-Gonzalez's deposition testimony that he did not recall ever seeing a document with C & C's name on it, that he never saw an advertisement from C & C, that he never went to a C & C store location, that he never saw C & C deliver any product to his place of work, and that he could not identify anyone at C & C who might know about the products he used at work. Reyes-Gonzalez also did not dispute he "never communicated, either in person or in writing, with C & C . . . or any of its employees or representatives."

C & C also argued Reyes-Gonzalez's discovery responses "fail[ed] to identify a single fact, witness, or document demonstrating an agreement, transaction, or communication with C & C . . . to support the necessary duty to disclose." C & C asserted Reyes-Gonzalez's response to its special interrogatory asking him to identify all facts supporting his cause of action for fraudulent concealment "did not contain any information pertaining to any sort of 'direct dealings' specifically between [Reyes-Gonzalez] and any employee, officer, or director of C & C . . . ." Though Reyes-Gonzalez disputed this fact in his response to C & C's separate statement, the evidence he relied on did not create a triable issue of material fact. Reyes-Gonzalez cited a portion of his interrogatory response identifying 18 officers and directors of C & C who purportedly knew that the company's artificial stone products were defective and that the

warnings C & C provided were inadequate to protect workers like Reyes-Gonzalez.  But his response did not state or support a reasonable inference Reyes-Gonzalez had any direct dealings with anyone at C & C.

> 3. *Reyes-Gonzalez Did Not Create a Triable Issue of Material Fact Regarding Whether C & C Had a Duty To Disclose*

In his opposition to the motion for summary judgment Reyes-Gonzalez stated, "Even assuming that C & C has somehow satisfied its threshold burden of proof on this issue, Plaintiff offers testimony regarding fraudulent concealment by of [*sic*] Roberto Contreras, Jr. (C & C's CEO from 1998 to 2010) and Federico J. Soria Soler (an officer of C & C from 2011 to 2013, Health & Safety Director of C & C from 2013 to 2014) and General Manager of C & C's San Francisco Distribution Center from 2014 onward.  These depositions were taken in 2015 in the case of *Ublester Rodriguez v. Breton USA et al.*—the first case of silicosis caused by Cosentino's artificial stone products in the US.  As is shown in Plaintiff's Separate Statement, the testimony of these officers of C & C . . .  raise multiple issues of material fact whether C & C fraudulently concealed the hazards of its artificial stone products from fabrication workers, including Plaintiff."  The problem with this argument was that Reyes-Gonzalez's separate statement did not include any facts regarding his cause of action for fraudulent concealment, nor did it cite to the transcripts of the depositions of Contreras or Soria Soler.

On appeal Reyes-Gonzalez does not argue he had a direct relationship with C & C, arguing instead that "California law does not always bar fraudulent concealment causes of action in the absence of transactions of 'direct dealings' between the

26

parties." Reyes-Gonzalez asserts "a duty to disclose may also arise when a defendant possesses or exerts control over material facts not readily available to the plaintiff." True enough. (See *Rattagan v. Uber Technologies, Inc.*, *supra*, 17 Cal.5th at p. 40 [category (3)].) But as discussed, that duty only arises in the context of a fiduciary or transactional relationship, and Reyes-Gonzalez did not create a triable issue of material fact on that point.

Relying on our decision in *Jones v. ConocoPhillips Co.* (2011) 198 Cal.App.4th 1187 (*Jones*), which predated the Supreme Court's decision in *Rattagan v. Uber Technologies, Inc.*, *supra*, 17 Cal.5th 1 by more than a decade, Reyes-Gonzalez argues "a transactional relationship[ ] exists between a worker who uses a hazardous product purchased by his or her hirer and the manufacturer or distributor from whom the hirer purchased that product," even in the absence of direct dealings between the worker and the manufacturer. Reyes-Gonzalez, however, did not make this argument (or even cite *Jones*) in his opposition to C & C's motion for summary judgment. Instead, he argued C & C "failed to meet its initial burden" on summary judgment because the deposition testimony it submitted in support of its motion was based on questions counsel for C & C asked "to create a sham record for seeking summary adjudication" on Reyes-Gonzalez's fraudulent concealment cause of action. Reyes-Gonzalez forfeited the argument he makes on appeal by not making it in the trial court. (See *Jackpot Harvesting Co., Inc. v. Superior Court*, *supra*, 26 Cal.App.5th at p. 155.)

Reyes-Gonzalez also misstates our holding in *Jones*. In that case, after the trial court had sustained demurrers without leave to amend, we considered whether the plaintiffs sufficiently

27

alleged a cause of action for fraudulent concealment against chemical manufacturers that sold their products to employers of the plaintiffs' decedent. On the issue of the defendants' duty to disclose the allegedly toxic properties of their products, we explained a duty to disclose may arise in the absence of a fiduciary duty, such as "when a defendant possesses or exerts control over material facts not readily available to the plaintiff." (*Jones*, *supra*, 198 Cal.App.4th at p. 1199.) The cases we cited for that proposition acknowledged, as the Supreme Court stated in *Rattagan v. Uber Technologies, Inc.*, *supra*, 17 Cal.5th at page 40, such a duty arises only when the plaintiff and the defendant have a preexisting relationship based on a transaction or contract. (*Jones*, at p. 1199; see *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 347 [duty to disclose "may exist when one party to a transaction has sole knowledge or access to material facts and knows that such facts are not known to or reasonably discoverable by the other party"]; *Magpali v. Farmers Group, Inc.* (1996) 48 Cal.App.4th 471, 482 [same]; *LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 337 ["where material facts are known to one party and not to the other, failure to disclose them is not actionable fraud unless there is *some relationship* between the parties which gives rise to a duty to disclose such known facts"].) We concluded in *Jones* the plaintiffs sufficiently alleged, for the purpose of surviving demurrer, a duty to disclose on the part of the chemical manufacturers. But we did not address whether the plaintiffs would ultimately be able to prove a sufficiently direct relationship between their decedent and the defendants to create a duty to disclose. And we did not hold, as Reyes-Gonzalez suggests, a manufacturer or supplier has a duty to disclose the hazards of its products to the employees (or, here, independent

28

contractors) of every person or company that purchases its products.  To the extent Reyes-Gonzalez suggests we expand the circumstances in which a duty to disclose may arise beyond what the Supreme Court authorized in *Rattagan*, we decline. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455; *R.L. v. Merced City School District* (2025) 114 Cal.App.5th 89, 115-116.)

Reyes-Gonzalez did not create a triable issue of material fact regarding C & C's duty to disclose.  Therefore, the trial court did not err in granting C & C's motion for summary adjudication on his cause of action for fraudulent concealment.

> E.   *The Trial Court Erred in Granting C & C's Motion for Summary Adjudication on Reyes-Gonzalez's Claim for Punitive Damages*

> 1.   *Applicable Law*

Civil Code section 3294, subdivision (a), provides the plaintiff may recover punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."  Civil Code section 3294, subdivision (c)(1), defines malice as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others."  "'Despicable conduct' is conduct that is "'so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people.""'" (*Butte Fire Cases* (2018) 24 Cal.App.5th 1150, 1159; accord, *Bartel v. Chicago Title Ins. Co.* (2025) 111 Cal.App.5th 655, 706-707.)  "'Conscious disregard' means "'that the defendant was aware of the probable dangerous

consequences of his conduct, and that he willfully and deliberately failed to avoid those consequences.'" [Citation.] Put another way, the defendant must 'have *actual knowledge* of the risk of harm it is creating and, in the face of that knowledge, fail to take steps it knows will reduce or eliminate the risk of harm.'" (*Butte Fire Cases*, at p. 1159; accord, *Applied Medical Distribution Corp. v. Jarrells* (2024) 100 Cal.App.5th 556, 595.)

### 2. *C & C Did Not Meet Its Moving Burden To Show It Did Not Act with Malice*

In support of his claim for punitive damages, Reyes-Gonzalez alleged the defendants "failed to warn [him] of known dangers, consciously disregarding [his] safety despite knowledge of the probable dangerous consequences of their products"; "were either aware of, or culpably indifferent to, unnecessary risks of injury to [him] and failed and refused to take steps to eliminate or adequately reduce the risk of said dangerous consequences"; "concealed" and "failed to warn" him "of adverse toxic effects" of their products; "consciously decided to market their stone products with knowledge of their harmful effects and without remedying the toxic effects of their stone products"; and "misrepresented the nature of their stone products, by withholding information from [him] regarding toxic and fibrogenic chemicals, including silica and metals, released from their products during their anticipated or reasonably foreseeable uses . . . ."

In the trial court C & C argued Reyes-Gonzalez could not establish C & C acted with malice for two reasons. First, C & C asserted "the Silestone and Dekton products had warnings, as acknowledged by Plaintiff, in their discovery

30

responses and operative complaint since 1999." To the extent C & C contends it did not act with malice because it warned Reyes-Gonzalez (or Silverio) about the hazards of working with artificial stone products, C & C did not submit any evidence to support that contention. As discussed, C & C submitted no evidence it provided material safety data sheets or any other type of warning with the products it delivered to Silverio.

Second, C & C asserted Reyes-Gonzalez, "in deposition, admitted that he did not read[ ] any warnings submitted on the Dekton and Silestone products, nor is he aware of any evidence that C & C . . . engaged in despicable conduct perpetrated in conscious disregard of his rights and safety." Setting aside the warning issue, C & C did not meet its initial burden to show it did not act with malice by asserting Reyes-Gonzalez was (personally) unaware of conduct showing C & C acted with malice. (See *Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at pp. 854-855 [defendant moving for summary judgment must present affirmative evidence and may not simply point out that plaintiff does not possess and cannot obtain relevant evidence].) To obtain summary adjudication C & C had to offer evidence it did not act with malice. (See *id*. at p. 851 [defendant moving for summary adjudication "must present evidence that would require a reasonable trier of fact not to find any underlying material fact more likely than not—otherwise, he would not be entitled to judgment as a matter of law, but would have to present his evidence to a trier of fact" (italics omitted)]; *LAOSD Asbestos Cases* (2023) 87 Cal.App.5th 939, 946; cf. *Butte Fire Cases*, *supra*, 24 Cal.App.5th 1150, 1168-1170 [defendant met its initial burden to show absence of malice by submitting detailed declarations by current and former staff regarding the defendant's wildfire

31

mitigation efforts].)  C & C did not make that showing.  As Reyes-Gonzalez points out, C & C did not submit evidence from anyone associated with C & C, such as an officer, agent, or employee, regarding C & C's knowledge (or lack of knowledge) of the potential hazards of working with artificial stone products or its efforts to fully and accurately disclose those hazards.

C & C argues (for the first time on appeal) it "carried its initial burden of showing the nonexistence of any triable issue of material fact on the issue of malice by relying on plaintiff's factually devoid response to C & C's special interrogatory asking plaintiff to state all facts supporting his punitive damages claim against C & C."  C & C asserts Reyes-Gonzalez "cut and pasted" allegations from his complaint in his answer to its interrogatory, rendering his response the sort of "boilerplate" and "factually devoid" answer a defendant moving for summary adjudication may rely on to shift the burden on summary judgment to the plaintiff.  (See *Bayramoglu v. Nationstar Mortgage LLC* (2020) 51 Cal.App.5th 726, 733 [when the defendant moves for summary judgment, the "plaintiff's 'factually devoid' discovery responses may be used to shift the burden of production onto the plaintiff when the 'logical inference' is that the plaintiff possesses no facts to support his or her claims"]; *Gaggero v. Yura* (2003) 108 Cal.App.4th 884, 892 [same]; see also *Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 107 ["If plaintiffs respond to comprehensive interrogatories seeking all known facts with boilerplate answers that restate their allegations, or simply provide laundry lists of people and/or documents, the burden of production will almost certainly be shifted to them once defendants move for summary judgment and properly present plaintiffs' factually devoid discovery responses."].)

Because (again) C & C did not make this argument in the trial court, it is forfeited.  (See *Doe v. Roman Catholic Archbishop of Los Angeles*, *supra*, 70 Cal.App.5th at p. 672; *Jackpot Harvesting Co., Inc. v. Superior Court*, *supra*, 26 Cal.App.5th at p. 155.)  In any event, C & C is incorrect.  Though Reyes-Gonzalez's interrogatory response repeated allegations from his operative complaint, it was not factually devoid.  It was very detailed.  For example, the response included seven pages of single-space text quoting specific portions of the material safety data sheets relating to Silestone and Dekton products and explaining why the quoted material was false or misleading.  Here's an example:  "On February 22, 1999 Cosentino issued a Material Safety Data Sheet for its Silestone® product which it identified as 'Agglomerated stone slabs, tiles and fabricated items.'  Section 2 of this document, regarding 'Hazardous Ingredients' has a table with five columns for Hazardous Ingredients, % by wt., % by vol., CAS #, and Other Limits.  However, the table is blank; i.e[.], it does not identify any hazardous ingredients, even though the product contained as much as 95% crystalline silica, which causes silicosis, lung cancer and other occupational diseases.  By failing to disclose crystalline silica as a hazardous ingredient of the product, Cosentino concealed this hazard from customers, their employees, and workers exposed to its lethal product."  The interrogatory response identified 28 other defects in the material safety data sheets for Silestone and Dekton.  Reyes-Gonzalez also included a lengthy explanation about health conditions suffered by people who work with artificial stone products and identified some of the medical and industrial research on the issue, all of which related to Reyes-Gonzalez's claim C & C knew but failed to adequately

33

disclose hazards relating to the products it supplied such that it acted in conscious disregard for his health and safety.

C & C failed to meet its moving burden to show it did not act with malice, and Reyes-Gonzalez's discovery responses did not shift the burden of production to him. The trial court erred in granting Reyes-Gonzalez's motion for summary adjudication on Reyes-Gonzalez's claim for punitive damages.

## DISPOSITION

The judgment is reversed. The trial court is directed to vacate its order granting C & C's motion for summary judgment and enter a new order (1) denying C & C's motion for summary judgment, (2) denying C & C's motion for summary adjudication on Reyes-Gonzalez's causes of action for negligence and products liability and on his claim for punitive damages, and (3) granting C & C's motion for summary adjudication on Reyes-Gonzalez's cause of action for fraudulent concealment. Reyes-Gonzalez is to recover his costs on appeal.

SEGAL, J.

We concur:

MARTINEZ, P. J.

FEUER, J.